UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN -4  P 4:55

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES OF AMERICA )
)
Plaintiff, )
)
v. )
) Crim. No. 04-10150 RGS
WARNER-LAMBERT COMPANY LLC )
)
Defendant. )
)

## DEFENDANT WARNER-LAMBERT COMPANY LLC'S SENTENCING MEMORANDUM

Defendant WARNER-LAMBERT COMPANY LLC (hereinafter "WARNER-LAMBERT") submits this memorandum in connection with the sentencing in the above-referenced matter. As explained more fully below, WARNER-LAMBERT's guilty plea to non-fraud charges and its agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), to pay a criminal fine of $240,000,000, are part of a proposed global settlement to resolve the criminal investigation and potential civil claims with respect to WARNER-LAMBERT's marketing of the drug Neurontin. WARNER-LAMBERT respectfully requests that the Court accept the terms of the proposed plea agreement and impose the agreed-upon sentence on the same day that the plea is entered, without requiring the preparation of a pre-sentence report.

I.   The Proposed Global Criminal and Civil Resolution

The proposed global civil and criminal resolution in this matter is the product of more than seven years of investigation by multiple government agencies and more than two years of negotiations among the United States Attorney's Office, representatives of the fifty states and the District of Columbia, and WARNER-LAMBERT.

The following is an overview of the components of the proposed global resolution that has been negotiated among the various parties:

(1) WARNER-LAMBERT has agreed to plead guilty to one count of introducing an unapproved drug into interstate commerce in violation of 21 U.S.C. §§ 331(d), 333(a)(2), and 355(a), and to one count of introducing a misbranded drug into interstate commerce in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and 352(f)(1). These Food, Drug and Cosmetic Act statutes provide that the strict-liability misdemeanor conduct to which WARNER-LAMBERT has agreed to plead guilty is elevated to a felony as a result of a prior conviction. In connection with the plea, WARNER-LAMBERT has agreed to pay a $240,000,000 criminal fine.

(2) WARNER-LAMBERT has agreed to settle potential civil claims under the federal False Claims Act, without any admission of liability, and to pay the United States $83,600,000, plus interest.

(3) WARNER-LAMBERT has agreed to settle all potential medicaid state claims relating to Neurontin and to pay to the fifty states and the District of Columbia, without any admission of liability, $68,400,000, plus interest.

(4) WARNER-LAMBERT has agreed to settle all potential consumer protection claims that could have been brought by the states and, without any admission of liability, to pay to the fifty states and the District of Columbia $38,000,000, plus interest.

(5) WARNER-LAMBERT's corporate parent, Pfizer Inc, which has not been accused of any wrongdoing, has entered into a Corporate Integrity Agreement that, in large measure, ensures that the changes Pfizer Inc made after acquiring WARNER-LAMBERT in June 2000, long after the charged conduct occurred, continue and that Pfizer Inc continues to train and supervise its marketing and sales staff in order to prevent and detect violations of law.

A.  Guilty Plea

WARNER-LAMBERT has agreed to plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to a two-count Information alleging that, on specific instances in 1995 and 1996, WARNER-LAMBERT violated certain provisions of the Food, Drug and Cosmetic Act.

1.  Background

Neurontin is a drug which was approved as adjunctive therapy for epilepsy – in other words, as a secondary medication that may be used in conjunction with another, primary medication – in December 1993. Since that time, Neurontin has gained widespread acceptance

2

in the medical community for the treatment of neuropathic pain and other off-label conditions for which there are few, if any, FDA-approved medications. It is well-established that a physician may prescribe an FDA-approved drug to serve any purpose that he or she deems appropriate, regardless of whether the drug has been approved for that particular use by the FDA. Washington Legal Found. v. Henney, 202 F.3d 331, 333 (D.C. Cir. 2000); see also Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 350 (2001). A pharmaceutical company cannot, however, promote a drug for any uses other than the specific use or uses approved by the FDA. In May 2002, after the acquisition of WARNER-LAMBERT by Pfizer Inc and after the alleged criminal conduct set forth in the Information, the FDA approved Neurontin as safe and effective for the treatment of post-herpetic neuralgia, a type of neuropathic pain.

        2.      The Relevant Provisions of the Food, Drug and Cosmetic Act

The conduct charged in the Information violates certain provisions of the Food, Drug and Cosmetic Act (the "FDCA" or the "Act"). The FDCA prohibits "[t]he introduction . . . into interstate commerce of any . . . drug . . . that is adulterated or misbranded." 21 U.S.C. § 331(a). The Act also prohibits the introduction of any new drug into interstate commerce unless an approval of an application is effective with respect to such drug. 21 U.S.C. § 355(a). These provisions are strict-liability misdemeanors, which require no proof of intent or scienter. Even if a drug has previously been approved for a particular use, if the drug is promoted for another, unapproved use, the manufacturer must seek FDA approval for that particular use before promoting the drug as such. The FDCA provides, however, that misdemeanor conduct is elevated to a felony as a result of a prior conviction under the Act. 21 U.S.C. § 333(a)(2).

3.  The Charged Conduct

The Information alleges that WARNER-LAMBERT promoted Neurontin for unapproved uses on specific dates from June 1995 through August 1996, through the specific, identified acts set forth in the Information. Although the conduct alleged in the Information constitutes a strict-liability misdemeanor, by virtue of a prior conviction, the charged conduct is elevated to a felony. Specifically, in 1995, Warner-Lambert Company pled guilty to a violation of 21 U.S.C. § 331(e), which requires pharmaceutical companies to file certain reports with the FDA.

As the Government indicates in its Sentencing Memorandum, and as the Information makes clear, WARNER-LAMBERT is not charged with fraud or with false or misleading conduct. Nor has WARNER-LAMBERT been charged with causing harm to any patient, and, indeed, there is no allegation of any such harm in this proceeding. WARNER-LAMBERT has agreed to plead guilty to, and admits only, the conduct specifically described in the Information.

B.  Criminal Fine

Pursuant to the terms of the proposed plea agreement, the Government represents, and WARNER-LAMBERT does not object, that the pecuniary gain to WARNER-LAMBERT as a result of the charged offenses for criminal sentencing purposes is $150,000,000, the appropriate multiplier is 1.6, and the criminal fine that should be imposed is $240,000,000. WARNER-LAMBERT and the United States both acknowledge that the pecuniary gain cannot be determined with precision and that the gain figure of $150,000,000 for criminal sentencing purposes is an estimate. The United States and WARNER-LAMBERT have agreed that the calculation of the criminal fine under U.S.S.G. § 8C2.4(a)(2) is appropriate under the circumstances of this case. Although WARNER-LAMBERT does not agree with the Government's methodology, given the difficulty in determining the pecuniary gain here, further

4

revisions or refinements to the proposed criminal fine would unduly complicate and prolong the sentencing process and should be avoided. See 18 U.S.C. § 3571(d).

WARNER-LAMBERT and the Government agree that the base culpability score is five pursuant to § 8C2.5(a); the parties agree that two points should be deducted pursuant to § 8C2.5(g)(2) because WARNER-LAMBERT cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for the charged conduct. The United States contends that five points should be added pursuant to U.S.S.G. § 8C2.5(b)(1)(A)(i) and/or (ii) because an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense, or tolerance of the offense by substantial authority personnel was pervasive throughout the organization, but WARNER-LAMBERT disagrees and contends that only three points should be added pursuant to § 8C2.5(b)(3)(B)(i) because the unit of the organization within which the offense was committed had two hundred or more employees and an individual within high-level personnel of the unit participated in, condoned, or was willfully ignorant of the offense. Pursuant to § 8C2.6, the applicable range for a multiplier is 1.6 to 3.2 consistent with the assessment of a culpability score by the United States, and the applicable range for a multiplier is 1.2 to 2.4 consistent with the assessment of a culpability score by WARNER-LAMBERT. The parties agree that the appropriate multiplier to be applied is 1.6. The parties further agree that there is no basis for a departure under the Sentencing Guidelines, either upward or downward.

C.   Special Assessment

Pursuant to 18 U.S.C. § 3013, the parties agree that a mandatory special assessment of $800 shall be paid to the Clerk of the Court by WARNER-LAMBERT on or before the date of sentencing.

D.  Civil Settlement Agreement

WARNER-LAMBERT, its corporate parent Pfizer Inc, the Department of Justice, the United States Attorney's Office for the District of Massachusetts on behalf of the Office of Inspector General of the United States Department of Health and Human Services, and the Relator in the civil False Claims Act lawsuit together entered into a Settlement Agreement and Release as of May 12, 2004. Under the terms of the Settlement Agreement and Release, without admitting any liability, WARNER-LAMBERT agreed to pay: (a) $83,600,000, plus interest, to the United States for potential civil claims under the federal False Claims Act; (b) $68,400,000, plus interest, to the fifty states and the District of Columbia for potential claims relating to the state Medicaid programs; and (c) $38,000,000, plus interest, to the fifty states and the District of Columbia for potential claims under state consumer protection provisions.

E.  Corporate Integrity Agreement

As noted above, the charged conduct occurred at WARNER-LAMBERT years prior to its acquisition by Pfizer Inc. Following the acquisition, Pfizer Inc took extraordinary steps to limit the potential for future regulatory violations regarding Neurontin. Although Pfizer is not alleged to have participated in any of the conduct at issue, Pfizer has entered into a Corporate Integrity Agreement to ensure that these changes which were made following Pfizer's acquisition of WARNER-LAMBERT and well after the charged conduct occurred continue to be effective in preventing and detecting violations of law.

F.  Restitution

As noted above, WARNER-LAMBERT has entered into a Civil Settlement Agreement with the United States, all fifty states, and the District of Columbia in the total amount of $190,000,000 plus interest. The charged conduct is a regulatory offense, and WARNER-

LAMBERT does not believe that any losses were suffered or that there was any harm to consumers. The Government has asserted, however, that losses were suffered by Medicaid programs. This dispute has been settled without any admission of liability. Moreover, the parties agreed that the appropriate disposition of this case does not include a restitution order because the losses suffered, if any, will be fully recompensed from amounts paid in connection with the Civil Settlement Agreement. Furthermore, the process of fashioning a restitution order would unduly complicate and prolong the sentencing process. See 18 U.S.C. § 3663(a)(1)(B)(ii).

G.   Probation

The plea agreement does not contemplate a need for probation in light of the fact that WARNER-LAMBERT and Pfizer Inc have entered into the Corporate Integrity Agreement described above. Accordingly, there is no need for a probationary term.

II.   Pre-Sentence Report

Under Fed. R. Crim. P. 32(b)(1) and § 6A1.1 of the Sentencing Guidelines, a court may impose sentence absent preparation of a pre-sentence report if: "the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553; and the court explains its finding on the record." Fed. R. Crim. P. 32(c)(1)(A)(ii); see also U.S.S.G. § 6A1.1. Here, WARNER-LAMBERT respectfully requests that the Court impose the agreed-upon sentence without requiring the preparation of a pre-sentence report. In light of the agreed-upon disposition of this case, an independent investigation by the Probation Department would add little to the record before the Court. Given the historical nature of the government's investigation (WARNER-LAMBERT is charged with criminal conduct in 1995 and 1996) and its complexity (the government's investigation spanned seven years and included extensive document review and interviews of numerous witnesses), it would be extremely

7

difficult for the Probation Department to conduct a meaningful, independent investigation. Instead, the United States and WARNER-LAMBERT would be the Probation Department's chief, and perhaps only, sources of relevant factual information as to "the nature and circumstances of the offense" (18 U.S.C. § 3553(a)(1)), including the amount of the alleged gain for purposes of the Sentencing Guidelines. As a result, WARNER-LAMBERT asks the Court to rely instead on the detailed information submitted by the parties. WARNER-LAMBERT respectfully submits that the Court has before it sufficient information to conclude that it can exercise its sentencing authority meaningfully under 18 U.S.C. §3553, and that it also has ample basis to explain that finding on the record. Accordingly, WARNER-LAMBERT asks that the agreed-upon sentence be imposed at the time of its guilty plea.

III.   Conclusion

WARNER-LAMBERT respectfully requests that the Court accept the agreed-upon disposition of this case and that it impose sentence without requiring the preparation of a pre-sentence report. The agreed-upon disposition of this case is part of a global settlement covering the charged conduct that includes multiple separate agreements involving the federal government, all fifty states and the District of Columbia. This global settlement was negotiated among the numerous parties over the course of more than two years, and further adjustment or refinement of the agreed-upon disposition of this matter would unduly complicate and prolong

the sentencing process. See 18 U.S.C. § 3663(a)(1)(B)(ii). The proposed sentence is sufficiently punitive, and provides substantial specific and general deterrence.

Dated: June 4, 2004

Respectfully submitted,

WARNER-LAMBERT COMPANY LLC

By their attorneys,

*/s/ Robert B. Fiske, Jr. / dbc*
Robert B. Fiske, Jr., Esq.
James P. Rouhandeh, Esq.
Martine M. Beamon, Esq.
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 6.4.04